| | | |
|---|---|---|
| TERI MYERS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 2:16-CV-96 |
| | ) | REEVES/CORKER |
| GREENE COUNTY BOARD OF | ) | |
| EDUCATION and DAVID McLAIN, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION

In October 2015, Teri Myers, a tenured public school teacher in Greene County, Tennessee, was drug tested at the direction of her employer and then suspended for three days. The next school year, she was transferred to a different school in the district, where she later applied for and was denied long-term health leave. Displeased with all of the above, Myers initiated this civil rights suit against the Greene County Board of Education and its Director of Schools, David McLain, in April 2016. Both defendants have moved for summary judgment. Myers filed a joint response to the motions[1] [D. 113], and defendants replied individually [D. 117, 118]. For the reasons that follow, McLain's motion [D. 88] and the Greene County Board of Education's motion [D. 90] are both **GRANTED**, and this case is **DISMISSED**.

---

[1] Because Myers intended to respond to both motions at once, the Court granted Myers leave to file excess pages in her response, up to but *not to exceed* 35 pages [D. 112]. Nevertheless, in addition to her 32-page response [D. 113], Myers also filed a 21-page supplementary document entitled "Plaintiff's Response to Defendants' Alleged Undisputed Material Facts and Plaintiff's Statement of Material Facts that Preclude Summary Judgment." [D. 114]. (Defendants did not submit a separate statement of undisputed facts, which might have merited this response.) Together, the combined response clearly exceeds the page limit imposed by the Court. Additionally, Myers submitted three full depositions in her supporting exhibits [D. 115], even though Local Rule 5.3 says that, when filing depositions, "only excerpts of the documents which are directly germane to the matter under consideration by the Court may be filed." E.D. Tenn. L.R. 5.3. Myers's counsel is warned to comply with the Court's orders and the District's Local Rules in the future.

TABLE OF CONTENTS

I.   BACKGROUND ................................................................................................................ 3

II.  STANDARD FOR SUMMARY JUDGMENT ................................................................. 7

III. DAVID MCLAIN'S MOTION FOR SUMMARY JUDGMENT ........................................... 8

  A.  McLain cannot be vicariously liable for another's actions under 42 U.S.C. § 1983 .......... 8

  B.  McLain is entitled to qualified immunity for ordering the drug testing ............................ 9

  C.  Myers may not recover damages from McLain for her three-day suspension ................. 12

IV. GREENE COUNTY BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT .................... 13

  A.  42 U.S.C. § 1983 Claims ................................................................................. 13

    1.  The Board is not liable for McLain's actions in ordering the drug testing pursuant
        to the Policy ................................................................................................ 13

    2.  Board Policy 5.403 is reasonably defined in scope .................................................. 14

    3.  The Board did not violate Myers's privacy when the drug results were placed in
        her personnel file ......................................................................................... 16

  B.  Americans with Disabilities Act Claims ....................................................................... 17

V.  CONCLUSION .............................................................................................................. 23

## I.    BACKGROUND[2]

Between 1993 and 2016, Teri Myers worked as a public school teacher in Greene County, Tennessee. At various times during her tenure, Myers had to take medical leave to deal with on-going health issues that substantially interfered with her ability work. The school administration was aware of at least some of Myers's health issues, which included low blood pressure, anemia, diabetes, dental issues, and stomach disorders.

During the 2015-2016 school year, Myers taught second grade at Baileyton Elementary. In late September 2015, she took several days' leave when she was hospitalized due to severe abdominal pain. On October 1, 2015, two days after she returned to work, Myers became weak and light-headed while teaching. She sent one of her students to notify another teacher that she required immediate assistance. After receiving some food and drink, Myers was able to resume her teaching responsibilities. Myers says that at no point did she lose consciousness, and adamantly denies falling asleep in the classroom. However, Baileyton Principal Randy Richards received several reports from students and parents that Myers had been sleeping during class. He relayed these reports to the Greene County Director of Schools, David McLain.

The next morning, on Friday, October 2, Myers got in a single-vehicle accident while driving to work. She contacted Richards to inform him that she would be a few minutes late. Richards passed this information along to McLain, who contacted the sheriff's department to look into the accident. McLain was informed that Myers left the scene of the accident before the officers arrived. When Myers arrived at school, Richards observed that she appeared lethargic and had trouble keeping her eyes open and holding her head up. Richards called the Assistant Director of Schools,

---

[2] Except as otherwise noted, the factual summary is based on Myers's Complaint and the parties' statements of fact. The material facts that are disputed and supported by deposition testimony, declaration, or other evidence are construed and stated in the light most favorable to the nonmovant, Myers.

Bill Ripley, to report his concerns. Ripley then informed McLain that Myers had "some slurred speech" when she arrived at work that morning [D. 88-2, at 8].[3] McLain was not informed of Myers's recent hospitalization or low blood pressure issues at this time.

Based on this report and the alleged sleeping incident, McLain made the decision to have Myers drug tested in accordance with the Board of Education's Policy 5.403. That policy allows for drug testing of any school employee based on reasonable suspicion, including in the event of "apparent physical state of impairment of motor functions" or when an employee is involved in an accident "where the use of alcohol or drugs is reasonably expected." [D. 88-3, at 7]. The policy specifies that "[a]ll procedures and requirements as stipulated in the [Department of Transportation] rules and regulations regarding alcohol and drug testing will be strictly adhered to, including appropriate record-keeping." [D. 56-1, at 2]. That afternoon, a school system supervisor drove Myers to a medical clinic where she was given a breathalyzer test for alcohol and urinalysis testing for twelve different substances.[4]

On Monday, October 5, Myers reported to the school board's central office for a meeting with McLain, Ripley, and Richards. At the meeting, Myers denied falling asleep in class. Nevertheless, McLain informed Myers that he was suspending her for three days for this reason. The written notification of the suspension indicates that the discipline was based on "neglect of duty and pending the results of [the] drug screening." [D. 88-2, at 25].

On October 6, Myers received a call from the medical review officer (MRO) at the drug testing facility asking for her to provide the officer with a comprehensive list of all prescription

---

[3] Myers disputes this characterization, and says that in his deposition, Richards noted only that Myers appeared "tired" and "lethargic." [D. 113, at 5; *see* D. 115-3, at 15, 17]. However, the issue is not what precise wording Richards used to describe the situation years later, but what *Ripley* relayed to McLain at the time. Regardless of whether Myers actually had slurred speech on October 2, it is undisputed that McLain was informed that this was the case.

[4] The drug results form notes that the drug test profile is a "10 panel drug screen [with] expanded opiates." [D. 56-3]. Although the panel only test for ten types of drugs, a urinalysis for opiates also discloses the presence of several specific opiates, including oxycodone and methadone.

medications that she was taking. Myers complied. The test results came back later that day; the drug screen showed "negative" for all substances tested and the breathalyzer registered 0.0. The results form includes a comment from the MRO noting a "potential safety concern regarding valid prescription medication usage." [D. 88-2, at 28]. A copy of the test results was inadvertently placed in Myers's publicly viewable personnel file, but was removed per Myers's request by November 5. Myers also asked that the three-day suspension be reversed in light of her negative drug test results, but this request was denied.

On April 4, 2016, Myers filed a charge of discrimination with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission against the Greene County School System, on grounds that the drug testing and suspension constituted disability discrimination [D. 115-2, at 215]. On April 26, 2016, Myers initiated this lawsuit against McLain and the Greene County Board of Education, bringing claims under 42 U.S.C. § 1983 for violations of her Fourth Amendment right to be free of unreasonable searches. Between May 2016 and August 2017, Myers amended her complaint four times in order to include additional claims, largely based on facts that occurred after she filed suit. Those facts are as follows.

In January 2016, Myers took several months of medical leave due to complications from breast augmentation surgery. Myers attempted to return to her teaching position in April 2016, but McLain suggested that she remain on medical leave for the remainder of the semester [D. 115-4, at 2-3]. The following school year, McLain transferred Myers to Doak Elementary School, where she was assigned the position of reading interventionist. In this new position, Myers worked with small groups of students on reading skills.

On the first day of work for teachers, Myers says that Doak Principal Jennifer Teague reprimanded her for dressing inappropriately, even though other teachers were wearing more revealing clothing. Then, during the first week of school, Teague placed Myers on a "Plan of Assistance" due to reports of absenteeism and tardiness in her previous position. (Myers acknowledges that she has continuously struggled with organization, time management, and attendance.) Myers agreed to the plan and at least three addenda, and admits that all of the plan's requirements were fair. That semester, Myers was observed in her classroom by school administration on approximately fourteen occasions.

During the first few months at Doak, Myers missed more than 20 days of school due to health issues. On November 14, 2016, Principal Teague sent McLain a formal request for a reprimand of Myers, based on Myers's ongoing issues with absenteeism and lesson plan preparation [D. 115-2, at 230]. Four days later, on November 18, Myers submitted a request for long-term health leave through June 1, 2017. McLain denied the request on December 2 for failure to attach any medical documentation, and informed Myers that any future leave requests "must include appropriate documentation as well as a signed release allowing us to interview the physician who claims you cannot return to work." [D. 56-4]. That same day, Myers submitted her letter of resignation. Since resigning from Doak, Myers has not worked anywhere else, although she has applied to more than forty different positions, including some teaching jobs.

In her Fourth Amended Complaint [D. 56], filed in August 2017, Myers added allegations that the Greene County Board of Education discriminated and retaliated against her in violation of the Americans with Disabilities Act. For these injuries, Myers seeks an award of back pay, compensatory damages, and employee benefits, and either reinstatement or front pay. She also maintains her § 1983 claims against McLain and the Board for violations of her Fourth Amendment

right to be free from unreasonable searches and her implied right to privacy. Both defendants have moved for summary judgment [D. 88, 90].

## II.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper only if the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*; *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016).

The moving party bears the initial burden of showing that there is no genuine issue of material fact on any element of the other party's claim or defense. *Stiles*, 819 F.3d at 847. In determining whether this burden is satisfied, the Court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the nonmoving party and drawing all justifiable inferences in that party's favor. *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir. 1994) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has satisfied its initial burden, the other party must show that a genuine issue of material fact still exists. *Stiles*, 819 F.3d at 847.

In ruling on a motion for summary judgment, the Court need not scour the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). But the Court does not weigh evidence, judge witnesses' credibility, or decide the truth of the matter, and any genuine disputes of fact that do exist must be resolved in favor of the nonmovant. *Anderson*, 477 U.S. at 249; *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014). Ultimately, "[t]he critical inquiry for a district court is 'whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)).

### III. DAVID MCLAIN'S MOTION FOR SUMMARY JUDGMENT

Myers claims that David McLain violated her Fourth Amendment rights in the following ways: (1) he ordered her to undergo a drug test without reasonable suspicion that she was guilty of substance abuse; (2) she was tested under a policy "of undefined scope, both as to the drugs for which the search would be conducted and the concentration of any drug that would constitute a positive result"; and (3) she was required to disclose her valid use of prescription medications to the MRO. Myers also claims that her implied right to privacy was violated when a record of the drug test results was placed in her personnel file because it included a notation calling into question her use of prescription medications.[5] She seeks money damages from McLain for the violation of her rights. In his motion for summary judgment [D. 88], McLain makes three primary arguments against Myers's claims. The Court will address each argument in turn.

### A. McLain cannot be vicariously liable for another's actions under 42 U.S.C. § 1983

McLain first says that he cannot be liable for the majority of Myers's § 1983 claims because aside from directing that Myers be drug tested, he was not personally involved in the allegedly unconstitutional activities. Section 1983 provides a federal cause of action against state officials

---

[5] Myers repeatedly claims that she has an implied right to privacy under the Fourth Amendment, which does not exist. Rather, "the right to privacy … is rooted in the substantive due process protections of the Fourteenth Amendment." *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). The particular type of privacy interest implicated in this case is the "interest in avoiding disclosure of personal matters." *Id.* (*quoting Whalen v. Roe*, 429 U.S. 589, 599 (1977)). The Sixth Circuit has described the "informational right to privacy" as "an individual's right to control the nature and extent of information released about that individual." *Id.* (*quoting Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998)).

for the deprivation of constitutional rights under color of state law. However, the doctrine of vicarious liability is inapplicable in § 1983 suits, which means that "a plaintiff must plead that each Government-official defendant, through the official's *own* individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added).

In this case, there is no evidence to indicate that McLain, sued in his individual capacity, was in any way personally involved in crafting the Board's drug testing policy,[6] or that he directed the MRO to ask Myers about her prescription medications. Accordingly, McLain cannot be held personally liable for any alleged constitutional defect in the drug testing policy and its procedures, or any constitutional violation arising from the MRO's actions. Further, Myers has not alleged that it was *McLain*, rather than some other school board employee, who placed the drug test results form in her personnel file, and thus McLain cannot be liable for this oversight either.

## B. McLain is entitled to qualified immunity for ordering the drug testing

McLain next claims that even though he ordered the drug testing, he is entitled to qualified immunity because the testing did not violate Myers's constitutional rights and/or his conduct in requesting that Myers be tested did not violate any "clearly established" right based on the particular facts of the case. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant

---

[6] Because McLain has been sued in his individual capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," *regardless* of whether he was acting pursuant to an official law, policy, or custom. *Hardin v. Straub*, 954 F.2d 1193, 1198 (6th Cir. 1992) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." *Id.* at 1199 (quoting *Graham*, 47 U.S. at 166).

claims qualified immunity, the "ultimate burden of proof is on the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (emphasis added). In determining whether a defendant should be granted immunity, the Court must decide (1) whether the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the defendant's alleged misconduct. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may address these prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For this claim, the first prong is dispositive.

The Constitutional right at issue in this case arises under the Fourth Amendment, which "safeguards the privacy of individuals against arbitrary and unwarranted governmental intrusions," including searches and seizures. *Knox Cty. Educ. Ass'n v. Knox Cty. Bd. of Educ.*, 158 F.3d 361, 371 (6th Cir. 1998). State-compelled drug testing is clearly a "search" within the Fourth Amendment's ambit.[7] *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618 (1989); *Knox Cty.*, 158 F.3d at 371. But the Constitution does not prohibit *all* searches; only those that are unreasonable. U.S. CONST. amend. IV. "The reasonableness of a search depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." 158 F.3d at 371 (quotation marks and citation omitted). The inquiry is an objective one: "the question is whether the [officials'] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Accordingly, governmental officials like McLain are "entitled to qualified immunity [when] their decision was *reasonable,* even if mistaken." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995) (emphasis in original) (citation omitted). In this case, Myers

---

[7] The Fourteenth Amendment extends the Fourth Amendment guarantee to searches conducted by state officers. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995) (*citing Elkins v. United States*, 364 U.S. 206, 213 (1960)).

says that McLain's decision was unreasonable because he did not have reasonable suspicion that Myers was guilty of substance abuse when he ordered the drug testing.

It is undisputed that McLain received reports that Myers had fallen asleep in front of her second-grade students on October 1. It is also undisputed that on October 2, McLain learned that Myers had been involved in a single-car accident on her way to school, and that she had left the scene of the accident before law enforcement officers arrived. Finally, it is undisputed that McLain was notified that Myers exhibited some signs of physical impairment after the accident. Based on these facts, the Court finds that a reasonable director of schools in McLain's position would believe that he had reasonable suspicion of potential substance abuse. (The fact that McLain apparently did not document the cause for this suspicion may be a facial violation of the Board's policy, but, standing alone, it is not a violation of the Fourth Amendment.)

Myers says that despite these facts, the drug testing was unreasonable because the administration at Baileyton was generally aware of her myriad health conditions and her need to take certain medications. But there is no evidence that McLain knew of Myers's recent ailments or hospitalization, which might have provided an alternative explanation for her lethargic behavior. And even if he had known, McLain still did not act unreasonably when he erred on the side of caution and ordered the drug testing—particularly in light of "the unique role [teachers] play in the lives of school children and the *in loco parentis* obligations imposed upon them." *Knox Cty.*, 158 F.3d at 379. By operation of Tennessee law, teachers do much more than educate; they also "stand in the place of students' natural parents and are responsible for their safekeeping." *Knox Cty.*, 158 F.3d at 375 (discussing Tenn. Code Ann § 49-6-4203(b)). Thus, a "local school district has a strong and abiding interest in requiring that teachers and other school officials be drug-free so that they can satisfy their statutory obligation to insure the safety and welfare of the children."

*Id.* at 379. Given this interest, the Sixth Circuit has held that even *suspicionless* drug testing of teachers is justified in certain circumstances.[8] *Id.* at 384 (holding that "the one-time, suspicionless testing of people hired to serve in teaching and administrative positions" does not violate the Fourth Amendment).

Based on the foregoing—including the unique position held by teachers in Tennessee and the facts confronting McLain on October 2, 2015—the Court finds that McLain did not act unreasonably when he ordered that Myers be drug tested. Thus, he is entitled to qualified immunity as to this claim.

### C. Myers may not recover damages from McLain for her three-day suspension

Finally, McLain says he is entitled to absolute immunity for any money damages that Myers may have incurred due to the three-day suspension. He cites to Tennessee Code § 49-5-512(b), which states that "[t]he director of schools … shall not be held liable, personally or officially, when performing their duties in prosecuting charges against any [tenured] teacher or teachers under this part." Subsection (d) of that part specifically addresses suspensions of three days or less that are not made in anticipation of dismissal. Tenn. Code Ann. § 49-5-512(d).

In response, Myers points out that she has not asserted a state-law claim challenging her suspension. Rather, her "sole cause of action against Director McLain is a claim under 42 U.S.C. § 1983 for violation of her federal constitutional rights under the Fourth and Fourteenth Amendments." [D. 113, at 19 n.16]. Myers claims that she is entitled to damages for the suspension because the suspension came about in conjunction with McLain's allegedly unconstitutional actions

---

[8] Although individualized suspicion is ordinarily required for a search to be reasonable under the Fourth Amendment, there are several other notable exceptions to this rule. *See, e.g.*, *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618 (1989) (upholding suspicionless drug testing of public employees that hold "safety-sensitive positions"); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 664-65 (1995) (upholding a policy of random, suspicionless drug testing of students who participate in public school athletic programs).

in ordering the drug testing. Of course, since the Court has already determined that McLain did not violate Myers's Fourth Amendment rights when he ordered that she be drug tested, Myers is not entitled to recover any associated damages.[9] And McLain is entitled to summary judgment on all claims against him.

## IV.  GREENE COUNTY BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT

The Greene County Board of Education ("the Board") has also filed a motion for summary judgment on all claims against it [D. 90]. Each of Myers's § 1983 claims against McLain has also been brought against the Board, along with claims under the Americans with Disabilities Act for discrimination (including constructive discharge), retaliation, and coercion.[10] The Court will address each claim in turn.

### A.  42 U.S.C. § 1983 Claims

Under § 1983, Myers claims that the Board violated her constitutional rights when: (1) its employee, McLain, ordered that she be drug tested without reasonable suspicion of substance abuse; (2) she was subjected to drug testing under an official policy of "undefined scope"; (3) she was required to disclose her prescription medication usage to the MRO; and (4) a Board employee placed the drug test results form in her personnel file.

#### 1.  *The Board is not liable for McLain's actions in ordering the drug testing pursuant to the Policy*

---

[9] Myers also says that the Supremacy Clause precludes McLain's state-law defense. But all of Myers's § 1983 claims against McLain have now been dismissed, and "the Supremacy Clause, of its own force, does not create rights enforceable under § 1983." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989).

[10] Despite some ambiguity in the Complaint, the ADA claims are against the Board only because McLain is not an "employer" subject to liability under the ADA. *See Wathen v. General Electric Co.*, 115 F.3d 400, 406 (6th Cir. 1997) (holding that "Congress did not intend individuals to face liability under the definition of 'employer'"); *Castle v. Sullivan Cty.*, 2008 WL 2887173, at *3 (E.D. Tenn. July 23, 2008) (quoting *Wathen*).

As to the first claim, Myers says that the Board is liable for McLain's actions in ordering the drug testing because McLain is an employee of the Board and he acted pursuant to its official policy—Policy 5.403 ("the Policy"). Under *Monell v. Department of Social Services of City of New York*, a local governmental entity may be liable for civil damages in a § 1983 action when the execution of its policy causes the deprivation of a constitutionally protected right. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. 658, 691 (1978)). However, the Supreme Court has held that *Monell* does *not* authorize an award of damages against a governmental entity when a jury has already concluded that no individual official inflicted an underlying constitutional harm. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). *See also Garner v. Memphis Police Dep't*, 8 F.3d 358, 365 (6th Cir. 1993) ("The point in *Heller* was that the city could not be held responsible for a constitutional violation which could have occurred but did not."). In granting McLain's motion for summary judgment, the Court has determined that no reasonable jury could find that McLain violated Myers's constitutional rights in ordering the drug testing. Thus, the Board is also entitled to summary judgment on this claim.

## 2. *Board Policy 5.403 is reasonably defined in its scope and disclosure procedures*

Myers next says that the Board violated her constitutional rights when it subjected her to drug testing under a policy of "undefined scope." [D. 56, at 7]. To prevail on this claim, Myers "must show that the School Board *itself* is the wrongdoer." 103 F.3d at 507 (emphasis in original). She cites to *Smith County Education Association v. Smith County Board of Education* for the proposition that any school drug testing regime must specify the drugs that are to be tested and the concentrations that constitute a positive result—neither of which is included in the Board's policy. 781 F. Supp. 2d 604, 619 (M.D. Tenn. 2011). The Court is not persuaded. First, *Smith County* is

not binding on this Court. Second, that case dealt with "truly random *suspicionless* searches," which is decidedly *not* the situation here. *Id.* at 618 (emphasis added).

Policy 5.403 states that drug testing may be conducted "when a supervisor observes and documents [the] behavior or appearance of an employee that causes *reasonable suspicion* of alcohol/drug misuse." [D. 56-1, at 2 (emphasis added)]. The Policy then provides a non-exhaustive list of circumstances under which drug screening may be ordered. In *Knox County Education Association v. Knox County Board of Education*, the Sixth Circuit upheld a suspicion-based testing policy with almost identical wording. 158 F.3d 361, 385 (6th Cir. 1998). In doing so, the Sixth Circuit determined that a policy allowing for drug testing of teachers based on "reasonable cause" of drug or alcohol use "sufficiently limits the discretion of the officials administering the rule and … comports with the reasonableness requirement of the Fourth Amendment." *Id.*

In that same case, the Sixth Circuit upheld a drug testing policy that allowed for an 18-panel drug test, despite the fact that the policy departed from Department of Transportation (DOT) procedures by screening for additional drugs for which there were no uniform testing standards. *Id.* at 381. Although the Sixth Circuit expressed some concern over this aspect of the policy, it determined that the policy's shortcomings were "insufficient to render the [drug] test unconstitutional." *Id.* at 382. This finding was largely based on the fact that the policy protected against false positives "by having the MRO conduct an interview with the individual testing positive and by enabling the MRO to review the individual's medical history and medical records to determine if the positive result was caused by legally prescribed medication." *Id.* The fact that the employee need only reveal that information to the MRO made any additional privacy invasion "minimal." *Id.* Ultimately, the Sixth Circuit concluded that "the drug-testing regime adopted by Knox County [was] circumscribed, narrowly-tailored, and not overly intrusive." *Id.* at 384.

In this case, Myers was tested based on individualized reasonable suspicion, and was screened for a total of twelve substances—six substances fewer than the policy that the Sixth Circuit upheld in *Knox County*.[11] Additionally, the MRO asked Myers about her valid prescription usage in accordance with DOT regulations and in order to avoid a false positive test result. *See* 49 C.F.R. § 40.129. (Far from being an invasion of privacy, as Myers alleges, this precautionary step has actually been lauded as a *protection* of privacy! *See Knox Cty.*, 58 F.3d at 382.) Based on the case law and the specific context of this case, the Court finds that Greene County's suspicion-based drug testing regime in effect on October 2, 2015, was sufficiently defined such that its execution did not deprive Myers of a constitutional right. Consequently, the Board is entitled to judgment as a matter of law as to this claim.

**3.** ***The Board did not violate Myers's privacy when the drug results were placed in her personnel file***

Finally, Myers contends that her right to privacy was violated when a Board employee placed the drug results form in her publicly accessible personnel file. In its motion for summary judgment, the Board says that it cannot be liable on this claim because "the undisputed facts demonstrate that [the] drug test results were never placed in [her] personnel file." [D. 91, at 10]. But this is *not* undisputed. In their joint answer, "Defendants admit those results were inadvertently placed in Myers' personnel file." [D. 50, at 7].

Nevertheless, the Board cannot be held liable for any alleged constitutional violation arising from the month-long misplacement of the drug results, for two primary reasons. First, a governmental entity may only be liable under § 1983 when the execution of its policy or custom inflicts the injury, and not simply upon the theory of *respondeat superior*. *Bennett v. City of Eastpointe*,

---

[11] It is unclear whether the *Knox County* policy listed the drugs tested on its face or whether this information was later entered into the record, but either way, the Court declines to hold that the omission of such a list would automatically render an otherwise sound policy unconstitutional.

410 F.3d 810, 818 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 691). Myers has not alleged that the Board has a policy or custom of placing drug test forms in employees' personnel files, or that any policy or custom led to this result. Second, it is undisputed that the drug results were placed in Myers's personnel file inadvertently. As the Supreme Court has made clear, "injuries inflicted by governmental negligence are not addressed by the United States Constitution." *Daniels v. Williams*, 474 U.S. 327, 333 (1986). Based on the foregoing, the Board is entitled to judgment as a matter of law. All of Myers's § 1983 claims have now been dismissed.

### B. Americans with Disabilities Act Claims

Myers's remaining claims have been brought under the Americans with Disabilities Act (ADA). The ADA prohibits covered entities from discriminating against a qualified individual on the basis of disability with respect to the various terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). It also prohibits retaliation against or coercion of any individual who participates in an investigation or proceeding related to a charge of discrimination. 42 U.S.C. § 12203.

Because Myers does not claim to have direct evidence of discrimination or retaliation, the Court analyzes her claims using the *McDonnell-Douglas* burden-shifting approach. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To recover on a claim for disability discrimination using this indirect method, a plaintiff must show that she "(1) is disabled, (2) is otherwise qualified for the position, with or without accommodation, (3) suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892 (6th Cir. 2016) (cleaned up). To establish a prima facie case of retaliation under the ADA, the plaintiff must show that (1) she engaged in activity protected under

the ADA; (2) the employer knew of that activity; (3) the employer took an adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014); *Cain v. Airborne Exp.*, 188 F.3d 506 (Table) (6th Cir. 1999).

The Board does not dispute that Myers is disabled for purposes of the ADA, or that she engaged in protected activity. But the Board contends that Myers cannot establish that she was qualified to perform the essential functions of the position or that she suffered an adverse employment action. Because the Board's second argument is potentially dispositive for both of Myers's ADA claims, the Court will address it first.[12]

An adverse employment action is "a materially adverse change in the terms and conditions of [a plaintiff's] employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (citing *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir.2004)) (alteration in original). The Sixth Circuit has "rejected the rule that only 'ultimate employment decisions,' such as hirings, firings, promotions, and demotions, can be materially adverse for the purpose of a … retaliation or discrimination claim." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007). Less dramatic decisions—such as a decrease in pay, a less distinguished title, or significantly diminished responsibilities—may also qualify. *Id.* But "a 'bruised ego' or a 'mere

---

[12] In the Title VII context, a plaintiff's burden of establishing a materially adverse employment action is "slightly less onerous" in the retaliation context than for antidiscrimination claims. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007). Whereas the antidiscrimination provision is limited to actions that affect the terms and conditions of employment, a "materially adverse employment action" in the context of a retaliation claim includes any action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). Presumably, this is also true under the ADA because, as the Sixth Circuit has repeatedly held, "Title VII analysis applies to ADA claims." *Cain v. Airborne Exp.*, 188 F.3d 506 n.2 (Table) (6th Cir. 1999). *See also Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 840 (6th Cir. 2002) ("Retaliation claims are treated the same whether brought under the ADA or Title VII…."); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (noting that "cases involving the ADEA and Title VII are instructive in cases involving the ADA"). The Court is mindful of this distinction in conducting its analysis.

inconvenience or an alteration of job responsibilities' is not sufficient…." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (citing *Burlington Northern*, 364 F.3d at 797).

Myers says that the Board took multiple adverse employment actions against her by:

> refusing to allow [her] to return to work at the school where she had taught for many years; transferring [her]; singling her out, immediately upon her arrival at her new assignment, for a reprimand; almost immediately placing her on a "plan of assistance"; subjecting her to multiple observations in excess of those called for by State Board of Education policy; denying her recuperation of health leave contrary to the requirements of state law; and insisting that as a condition of any future leave [she] must submit a signed release allowing the Defendants carte blanche access to the [her] confidential medical information….

[D. 56, at 10]. She says that these actions, in combination, led to her constructive discharge, which exists when working conditions are so intolerable that "a reasonable person would have been compelled to resign," and the plaintiff actually resigns. *Gosbin v. Jefferson Cty. Commissioners*, 2018 WL 1037402, at *8 (6th Cir. Feb. 23, 2018). The Court disagrees. As a matter of law, none of the actions alleged by Myers, alone or in combination, can be considered "materially adverse" under the ADA, or rise to such a level that a reasonable person would have been compelled to resign.

First, even viewing the facts in the light most favorable to Myers, there is simply no evidence to suggest that the Board "refused" to allow Myers to return to work at Baileyton after her extended leave of absence expired in April 2016. Rather, as Myers herself states, McLain merely "suggested" that she remain out on leave for the balance of the school year [D. 115-4, at 2-3] and then "gave [her] medical leave" for that additional time [D. 114, at 10]. Since Myers had been on leave for almost the entire semester—which, by mid-April, was almost over—this suggestion (and the grant of extended leave) is far from unreasonable.

Second, while it is true that "position transfers can qualify as adverse employment actions," the record indicates that Myers did not actually consider the reassignment "adverse." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). Despite the change in job responsibilities (though no decrease in pay), Myers says that she did not view the transfer as a demotion [D. 115-1, at 52-53]. In fact, Myers testified that she was "excited" about the new position at Doak Elementary because she viewed it as a "fresh start." [*Id.* at 53]. Even now, it appears that Myers would willingly return to her former position, if given the opportunity—in the prayer for relief section of her Complaint, Myers seeks reinstatement, if feasible [D. 56, at 12].

Third, it is undisputed that Myers never received a formal reprimand while working at Doak in the Fall of 2016. In November of that year, Principal Teague sent McLain a *request* for a reprimand of Myers, but the request does not appear to have gone anywhere. Additionally, Teague's alleged verbal admonishment about inappropriate work attire, even if unfair, is insufficient to constitute a materially adverse employment action for purposes of the ADA. *Cf. Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (finding that a confrontation between a manager and employee "in which harsh words were exchanged, does not amount to a materially adverse action").

Fourth, the Plan of Assistance was not materially adverse and could not have contributed to a constructive discharge because Myers expressly agreed to the plan; she admitted that all of its requirements were fair; and it was clearly intended to help, rather than hurt, Myers's professional security [D. 115-1, at 55-56]. The plan was specifically tailored to address Myers's admitted weaknesses of organization, time management, and attendance [*Id.* at 22, 55]. For instance, it required that Myers be on time to work each day, set expectations and procedures in the classroom, attend monthly meetings for feedback, submit a doctor's statement for medical leave longer than three

days, and partner with and regularly observe a mentor teacher on a weekly basis. *Cf. Michael*, 496 F.3d at 595 (finding that a performance plan was not a materially adverse employment action because "most of the plan requirements simply called for [the plaintiff] to refrain from engaging in certain unreasonable practices"). Myers may be a bit disgruntled that she, a tenured teacher, was placed on a Plan of Assistance. But "[the] institution of performance improvement plans, alone, do not constitute objectively intolerable conditions," and a bruised ego does not an adverse action make. *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002).

Fifth, by signing the Plan of Assistance, Myers expressly agreed to multiple classroom walkthroughs and formal observations—beyond what she would normally be subjected to, as a tenured teacher—in order to allow Doak administration to monitor her progress and compliance with the plan. The plan specifies eight dates for initial monitoring, and Addendum B adds at least three more [D. 115-2, at 225, 227]. The fact that Myers later felt that the "continuous walkthroughs" constituted "harassment" because "a new teacher doesn't get that many" is of little consequence to her claim [D. 115-1, at 63]. Simply put, no reasonable person would feel compelled to resign because her employer put her on a plan of assistance and then conducted observations (agreed-upon or not) to monitor her progress with that plan. This may be an inconvenience, but it is not a materially adverse employment action.

Sixth, Myers's request for more than six months of health leave was not denied "contrary to state law requirements," as Myers states.[13] It is undisputed that the request was denied because she failed to provide any medical documentation to support such an extended leave [D. 56-4]. Myers knew that this documentation was necessary. Several years prior, in early 2013, Myers had

---

[13] Myers's complaint cites to Tennessee Code § 49-5-702 for the proposition that any recuperation of health leave "shall be granted." But read in context, it is clear that that section requires only that *when* medical leave is granted, it "shall be granted … without forfeiture of accumulated leave credits, tenure status or other fringe benefits." Tenn. Code Ann. § 49-5-702(a).

been informed that she needed to provide a doctor's statement with any future leave requests, due to ongoing issues with "excessive absenteeism" [D. 115-1, at 48-49, 130].[14] (Between 2002 and 2016, Myers requested and was granted medical leave on at least 15 occasions [*Id.* at 46].) As recently as Spring 2016, Myers requested more than three months of health leave [*Id.* at 47]. She provided the necessary medical documentation, and the leave was granted [*Id.* at 47, 68]. But when she submitted her long-term leave request in November 2016, Myers did not attach a doctor's note, and it was denied for this reason.

Finally, Myers needlessly mischaracterizes the Board's demand for permission to speak with her physician. In the letter denying Myers's leave request, McLain states that in addition to appropriate medical documentation, any future leave requests must include "a signed release allowing us to interview the physician who claims you cannot return to work." [D. 56-4]. Contrary to Myers's interpretation, this statement does *not* require that Myers grant the Board "a complete release of medical records and carte blanche access to [her] medical information" as a condition for any future leave [D. 56, at 11]. And in light of Myers's request for more than six months of medical leave, the interview requirement is not unreasonable. Nor is it unlawful. Under the Family and Medical Leave Act, "the employer may contact the [employee's] health care provider for purposes of clarification and authentication of the medical certification," so long as no additional medical information is requested. 29 C.F.R. § 825.307(a). Thus, the Board's condition that Myers permit such contact does not constitute an adverse employment action, and no reasonable person would feel compelled to resign rather than comply with this requirement.

Myers repeatedly says that, in light of the foregoing conditions (particularly the last one), she had "no choice" or "no alternative" but to resign [*see, e.g.*, D. 56, at 10; D. 115-4, at 3]. But

---

[14] Under the Family and Medical Leave Act, an employer may lawfully require that an employee's request for leave be supported by a certification issued by a health care provider. *See* 29 U.S.C. § 2613; 29 C.F.R. § 825.305.

her letter of resignation clearly states that her resignation is "due to [her] health conditions," and indicates that she would have resigned even if her leave request had been granted [D. 115-1, at 131]. As Myers writes, "even though my Leave of Absence for recuperation of health was denied, it is *still* in my best interest for my health that it would be the best option [sic] to officially resign my position since the situations are getting more unhealthy [sic] for me." [*Id.* (emphasis added)].

Based on the foregoing and viewing the facts in a light most favorable to Myers, the Court finds that Myers did not suffer any actionable adverse employment action and was not constructively discharged. Because Myers has failed to establish an essential element of her claims for discrimination and retaliation under the ADA, the Court need not opine as to whether she was qualified to perform the essential functions of her former position.[15] The Board is entitled to judgment as a matter of law on Myers's ADA claims.

V.    CONCLUSION

Based on the foregoing, David McLain's motion for summary judgment [D. 88] and Greene County Board of Education's motion for summary judgment [D. 90] are both **GRANTED**, and this case is **DISMISSED**.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

---

[15] The Board also contends that Myers is not entitled to lost wages in the form of front pay or back pay because she did not properly mitigate her damages as the ADA requires. But the Court does not need to reach this issue either. Since all of Myers's claims have now been dismissed, she is not entitled to any damages.